CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
9/14/2023
LAURA A. AUSTIN, CLERK
BY: s/ CARMEN AMOS
        DEPUTY CLERK

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Lynchburg Division**

| | |
|---|---|
| **JANE DOE,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | Civil Action No. **6:23CV00052** |
| **BOARD OF VISITORS, VIRGINIA** ) | |
| **MILITARY INSTITUTE,** ) | |
| ) | |
| Defendant. ) | |

**COMPLAINT**

COMES NOW Plaintiff, Jane Doe, by counsel, and hereby presents this Complaint against Defendant Board of Visitors of Virginia Military Institute ("Defendant" or "VMI").

**I. JURISDICTION AND VENUE**

1. This Court possesses jurisdiction over this matter because it arises under Title IX of the Education Amendments Act of 1972, as codified under 20 U.S.C. §§ 1681, *et seq.* ("Title IX"). *See* 28 U.S.C. § 1331; 28 U.S.C. § 1343(a); 42 U.S.C. § 2000e-5(f); 42 U.S.C. §12117(a).

2. Due to its contacts within the Commonwealth of Virginia, VMI avails itself to the jurisdiction of this Court. Venue is appropriate as the acts and/or omissions of VMI from which the causes of action arise, occurred in Rockbridge County, Virginia, which is located within the Western District of Virginia, Lynchburg Division. *See* 28 U.S.C. § 1391(b)(2).

3. Jane Doe has no need to exhaust any administrative remedies prior to the initiation of this action.

4. VMI does not have sovereign immunity to this action. Since 1890, the

Supreme Court of the United States consistently has held that this Amendment protects a state from being sued in federal court without the state's consent. *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 54 n.7 (1996) (citing cases). However, federal courts have jurisdiction over a state if the state has either waived its immunity or Congress has abrogated unequivocally a state's immunity pursuant to valid powers. *Id*. at 68. Congress has unequivocally done so with respect to Title IX and related statutes (Spending Clause statutes).

5. In 1986, Congress enacted 42 U.S.C. § 2000d-7 as part of the Rehabilitation Act Amendments of 1986, Pub. L. No. 99-506, Tit. X, § 1003, 100 Stat. 1845 (1986), to abrogate states' immunity from suit for violations of Section 504, Title VI, **Title IX**, the Age Discrimination Act, and similar nondiscrimination statutes. *See Sossamon v. Texas*, 131 S. Ct. 1651, 1662 (2011).

6. Section 2000d-7(a) states:

> (1) A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of … title VI of the Civil Rights Act of 1964, … or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance.
>
> (2) In a suit against a State for a violation of a statute referred to in paragraph (1), remedies (including remedies both at law and in equity) are available for such a violation to the same extent as such remedies are available for such a violation in the suit against any public or private entity other than a State.

## II. STATEMENT OF FACTS

7. Jane Doe was a minor and a high school student exploring her options for her collegiate education in 2021. Jane Doe identifies as a female. The incidents of this case occurred while Jane Doe was of tender years and her identity is respectfully

2

concealed in this public filing. Filed contemporaneously with this pleading is a motion to proceed in this matter under a pseudonym.

8. Jane Doe was raised in a family with strong family ties to VMI. Members of Jane Doe's immediate family attended VMI. Both of Jane Doe's parents were employees of VMI in 2021.

9. Upon information and belief, VMI receives federal funds from the United States Government and is required to comply with Title IX.

10. On September 17-18, 2021, VMI hosted an "open house" event on campus for prospective students and their families. Jane Doe attended with her family.

11. The day had several planned events, speakers, and activities.

12. VMI invited Jane Doe and other prospective students, to spend the night on campus - - referred to as "post" - - in a barracks, which is similar to a college dormitory in many aspects. Jane Doe was assigned a cadet host to house her for the evening in a shared single-room space. Jane Doe accepted this invitation.

13. At all times VMI maintained that Jane Doe would be staying in a safe and supervised environment.

14. Jane Doe said goodbye to her parents, proceeded to supper with other prospective students, and then entered the barracks where she met her cadet host.

15. There existed no personnel supervision after Jane Doe entered the barracks and met her cadet host.

16. During the early morning hours, Jane Doe was sexually assaulted and battered by her student cadet host while in her host's barracks room. This assault and battery ("the assault") satisfied the definition of "sexual abuse" pursuant Va. Code § 18.2-67.10 and the elements of "sexual battery" pursuant to Va. Code § 18.2-67.4.

3

17. The assault qualified as "sexual harassment" as that term is broadly used by Title IX. *See* 34 CFR 106.30; *see also*, 20 U.S.C. 1092(f)(6)(A)(v).

18. At all times relevant VMI failed in maintaining an environment safe for Jane Doe.

19. The barracks at which Jane Doe suffered the assault was controlled by VMI. VMI at all times exercised substantial control over the cadet host and the context in which the sexual harassment occurred.

20. At all times VMI failed in its duty to maintain a safe campus in accordance with federal law.

21. On the following day, Jane Doe was reunited with her parents and began to cry. She did not explain what had occurred the previous evening at this time. Jane Doe's parents comforted Jane Doe and were very concerned given her stricken demeanor.

22. Jane Doe and her family attended a program in an auditorium where Commandant Col. Adrian Bogart stated to the attendees that his role on campus was to ensure the safety of all students. Upon hearing this, Jane Doe became so upset and distressed, she stood up and ran out of the room. Jane Doe's father followed to console her.

23. The family left in the same vehicle that day. When they arrived home, Jane Doe expressed in an extremely distressed manner how she had been sexually assaulted on campus.

24. Due to the events outlined above, Jane Doe suffered irreparable harm and severe emotional distress.

25. On or about September 19, 2021, Jane Doe's father contacted a member of the VMI Police staff and disclosed the incident regarding the assault and battery. This

4

disclosure resulted in Jane Doe and her parents going to the VMI Police headquarters on Monday, September 20, 2021. There Jane Doe was interviewed by two members of the VMI Police staff. Jane Doe's parents were not present for the interview.

26. At all times after September 19, 2021, VMI had actual notice knowledge of Plaintiff's Title IX formal complaint.

27. An investigation of the incident ensued, which should have been memorialized as a formal complaint pursuant to 34 CFR 106.30. As detailed below, VMI did not follow all required steps pursuant to Title IX. The incidents relayed to the Title IX Coordinator fulfilled the definition of a "formal complaint" as provided in federal regulations.

28. Though VMI purportedly investigated the incidents alleged to have occurred, the procedural missteps and violations of federal regulations governing adherence to Title IX posits the question of whether VMI truly considered the matter a "formal complaint" pursuant to 34 CFR 106.30.

29. Jane Doe qualified as a "complainant" pursuant to Title IX.

30. At all times relevant to this Complaint, Jane Doe was "attempting to participate in the education program" of VMI as a recruited prospective student. 34 CFR 106.30.

31. VMI's Title IX Coordinator appeared to manage the investigation at times.

32. Throughout the Fall of 2021, Jane Doe and her family were kept in the dark as to steps taken by VMI regarding the investigation, steps taken to address concerns of Jane Doe and her parents regarding campus safety, and any information gathered in the investigation. VMI did not share information about the incident, or any steps taken thereafter to address the incident, with Jane Doe or her family.

33. Jane Doe's parents met with Superintendent Wins in late December of 2021. Superintendent Wins stated that Jane Doe's claims were deemed unfounded but, again, shared no information about evidence gathered in the course of the investigation.

34. After repeated requests to the Title IX office for updates regarding the status of the case, Jane Doe's parents were referred to a VMI administrator, LTC John Young, Chief of Staff. Jane Doe's parents met with the VMI administrator on or about February 21, 2022. In this discussion, the VMI administrator stated that the matter was over.

35. The environment in which Jane Doe stayed was dangerous due to VMI's deliberate indifference of campus safety and Title IX protections. But for the deliberate indifference of VMI, the assault would not have occurred.

36. At no time were Jane Doe or her parents notified of timeframes of any stage of the investigation.

37. At no time were Jane Doe or her parents fully advised of her rights under Title IX.

38. At no time were Jane Doe or her parents advised of their right to an attorney.

39. At no time was Jane Doe provided with any written statements, summary of evidence, or audio recordings of interviews collected pursuant to any Title IX investigation.

40. At no time was Jane Doe provided with "supportive measures" as that term is used by 34 CFR 106.30.

41. From the perspective of Jane Doe, VMI did not coordinate "the effective implementation of supportive measures." 34 CFR 106.30.

42. At no time did VMI take prompt or effective steps reasonably calculated to

6

end sexual violence, prevent its recurrence, or apply other effective remedies.

43. Due to VMI's acts and omissions, Jane Doe did not seek attendance at VMI, breaking with family tradition. Jane Doe suffered economic harm due to VMI's act and omissions.

44. Upon information, VMI's Title IX training was and continues to be inadequate. VMI has continued to permit an environment to exist on campus that does not protect students from sexual harassment as that term is used by Title IX.

45. VMI's duties to Jane Doe throughout the Title IX process are found in part in 34 CFR 106.44. These duties include:

   a. Responding to knowledge of sexual harassment "promptly in a manner that is not deliberately indifferent."
   b. Not responding to knowledge of the known circumstances in a "clearly unreasonable" way.
   c. Responding "equitably" by offering "supportive measures".
   d. "Prompt" contact from the Title IX Coordinator explaining available and possible "supportive measures".
   e. Consideration of "the complainant's wishes with respect to supportive measures."
   f. Providing a "grievance process that complies with [34 CFR 106.45]".
      i. 34 CFR 106.45 provides the many due process duties for the procedures of a hearing pursuant to Title IX. (VMI's "grievance process must provide for a live hearing.")
   g. Never acting "deliberately indifferent" of either the situation or the complainant.

46. VMI failed all the above enumerated duties.

47. VMI violated 24 CFR 106.44 and 34 CFR 106.45 as it relates to the handling of Jane Doe's formal complaint.

48. Title IX is considered one of the Spending Clause statutes. When a federal-funds recipient such as VMI violates conditions of Spending Clause legislation, the wrong done is the failure to provide what the contractual obligation requires; and that wrong is "made good" when the recipient compensates the third-party beneficiary for the loss caused by that failure. Jane Doe seeks equitable relief.

49. The public interest is served by an award of equitable relief to Jane Doe. Jane Doe is equitably owed supportive measures, due process - - including evidence gathered in the course of the investigation - -, a hearing, and other duties part and parcel to her role as a complainant pursuant to Title IX. VMI robbed Jane Doe of these equitable measures and VMI must be enjoined by this Court to provide such equitable relief.

50. Jane Doe (1) has suffered an irreparable injury; (2) monetary damages are inadequate to compensate for this injury; (3) considering the balance of hardships between the Jane Doe and VMI, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.

51. Upon belief, the procedural missteps and violations of federal regulations that victimized Jane Doe continue due to VMI's current practices and policies.

## COUNT I: INJUNCTION PURSUANT TO TITLE IX

52. Jane Doe incorporates by reference herein the preceding paragraphs of this Complaint.

53. Plaintiff was and is entitled to equitable relief from VMI.

54. As noted above, VMI repeatedly violated regulations regarding Jane Doe's

Title IX complaint.

    55.    Jane Doe pleads this Court to enjoin VMI to do the following:

        a. Provide supportive measures in accordance with Title IX;

        b. Provide all due process owed to Jane Doe including providing evidence and the opportunity for a hearing; and

        c. Any and all other such relief that the Court should find equitable.

## COUNT II: SEX DISCRIMINATION PURSUANT TO TITLE IX

56. Jane Doe incorporates by reference herein the preceding paragraphs of this Complaint.

57. Title IX, the key federal law prohibiting sex discrimination against students, prospective students, and employees in education programs and activities receiving federal financial assistance, states that no person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefit of, or be subjected to discrimination under any education program or activity receiving federal financial assistance. *See* 20 U.S.C. §§ 1681, *et seq*.

58. Title IX requires educational institutions to maintain policies, practices and programs that do not discriminate against anyone based on sex. Under this law, males and females are expected to receive fair and equal treatment in all arenas of schooling. *Id.*

59. Title IX regulates private schools who choose to receive federal funding. *Litman v. George Mason Univ.*, 5 F. Supp. 2d 366, 373 (E.D. Va. 1998).

60. At all times relevant, VMI had a Title IX policy in place, and an obligation to adequately respond to sexual assault and sexual discrimination occurring on its campus.

61. Retaliation against a person because that person has complained of sex discrimination or sexual misconduct is another form of intentional sex discrimination encompassed by Title IX's private cause of action.

62. Jane Doe, a member of a protected class, was subjected to a discriminatory and hostile environment created by VMI's failure to appropriately address the sexual harassment experienced by Jane Doe, in violation of Title IX, and VMI's own Title IX policy.

63. VMI failed to take effective remedial steps to resolve Jane Doe's Title IX complaint.

64. The assault committed occurred on VMI's campus, which was under the supervision and monitoring of VMI and, at all times relevant, VMI retained substantial control over the context in which this sexual misconduct occurred.

65. VMI's failure to investigate and adequately respond to Jane Doe's Title IX complaint, resulted in Jane Doe, on the basis of her sex, being denied the benefits of VMI's educational opportunities, and being subjected to discrimination in violation of Title IX.

66. VMI failed to comply with its own sexual misconduct policy in violation of Title IX through various acts and omissions, as detailed above.

67. VMI's mishandling of Jane Doe's Title IX complaint was so severe, pervasive and objectively offensive that it contributed to and proximately caused Jane Doe to incur injuries and damages including, but not limited to, denying Jane Doe access to the educational opportunities and benefits offered by VMI, denying Jane Doe the resources necessary to advance her Title IX complaint, irreparable harm to Jane Doe's reputation and well-being, pecuniary and other financial losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary loss.

68. The above-described acts by VMI constitute discrimination in violation of Title IX

of the Education Amendments Act of 1972, as codified under 20 U.S.C. §§ 1681, *et seq*.

**WHEREFORE**, Plaintiff Jane Doe prays for judgment against Defendant Board of Visitors of Virginia Military Institute, for actual damages, contract damages, actual losses, together with prejudgment and post judgment interest and attorneys' fees and costs, and for an order permanently enjoining Defendant to:

a. Provide Jane Doe with supportive measures in accordance with Title IX;

b. Provide all due process owed to Jane Doe including evidence and the opportunity for a hearing; and

c. Any and all other such relief that the Court should find equitable.

A TRIAL BY JURY ON ALL THINGS TRIABLE IS HEREBY REQUESTED INCLUDING WHETHER THIS ACTION IS SUBJECT TO ENFORCEABLE ARBITRATION.

Respectfully submitted,

By _____
Of Counsel

Thomas E. Strelka, Esq. (VSB # 75488)
*Counsel for Plaintiff*

Thomas E. Strelka, Esq. (VSB # 75488)
L. Leigh Rhoads, Esq. (VSB # 73355)
Brittany M. Haddox, Esq. (VSB # 86416)
STRELKA EMPLOYMENT LAW
4227 Colonial Avenue
Roanoke, VA  24018
Tel:  540-283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com

brittany@strelkalaw.com